|  |  |  |
|---|---|---|
| ENIL RAMON MONTOYA VELASQUEZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

On January 10, 2025, Enil Ramon Montoya Velasquez ("Velasquez" or "petitioner") moved to vacate, set aside, or correct his convictions for distributing a quantity of cocaine and possessing with intent to distribute a quantity of cocaine and his 264-month sentence [D.E. 167] and filed a memorandum in support [D.E. 168]. On April 7, 2025, Velasquez moved for judgment on his section 2255 motion [D.E. 170]. On January 28, 2026, the United States moved to dismiss Velasquez's section 2255 motion and to deny Velasquez's motion for judgment [D.E. 179] and filed a memorandum in support [D.E. 180]. See Fed. R. Civ. P. 12(b)(1), (6). On March 17, 2026, Velasquez responded in opposition [D.E. 184] and filed a memorandum in support [D.E. 185]. As explained below, the court grants the United States' motion to dismiss, dismisses Velasquez's section 2255 motion, denies as moot Velasquez's motion for judgment, and denies a certificate of appealability.

I.

On August 28, 2018, a grand jury charged Velasquez with conspiring to distribute and possess with the intent to distribute 500 grams or more of a mixture and substance containing a

detectable amount of methamphetamine and a quantity of cocaine in violation of 21 U.S.C. § 846 (count one), distributing a quantity of cocaine in violation of 21 U.S.C. § 841(a)(1) (counts two and three), distributing 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) (count four), and possessing with intent to distribute a quantity of cocaine in violation of 21 U.S.C. § 841(a)(1) (count five). See [D.E. 15].

On July 22, 2019, the court held Velasquez's arraignment and Rule 11 proceeding with two interpreters present. See [D.E. 39]; Rule 11 Tr. [D.E. 120] 1–2. The court advised Velasquez of his rights to a jury trial, to plead not guilty to the charges against him, to be represented by counsel at all proceedings including trial, to confront and cross-examine witnesses, to offer evidence at trial, to use the subpoena power of the court to compel the attendance of witnesses at trial, the right to testify at trial, and the right not to testify at trial. See Rule 11 Tr. 5; Fed. R. Crim. P. 11(b)(1)(B)–(E). The court advised Velasquez that if he pleaded guilty, he would waive the right to a jury trial and the other trial rights as to any charge to which he pleaded guilty. See Rule 11 Tr. 6; Fed. R. Crim. P. 11(b)(1)(F). The court also explained the sentencing process and the consequences of pleading guilty, including that a convicted defendant who is not a United States citizen may be removed from the United States, denied United States citizenship, and denied future admission to the United States after serving a sentence of imprisonment in the United States. See Rule 11 Tr. 7–8; Fed. R. Crim. P. 11(b)(1)(O); see also Rule 11 Tr. 9–12. The court also explained the court's authority to order restitution, impose a special assessment, and order a term of supervised release. See Rule 11 Tr. 8; Fed. R. Crim. P. 11(b)(1)(K)–(L). The court then asked Velasquez and his counsel a series of questions concerning the court's advisement of rights, he

Case 7:18-cr-00144-D    Document 186    Filed 06/01/26    Page 2 of 19

defendant's capacity to knowingly and voluntarily enter a plea, and the representation by counsel. See Rule 11 Tr. 12–15.

As part of the Rule 11 process, the clerk placed Velasquez under oath, and the court warned Velasquez that his answers to the court's questions were subject to the penalty of perjury and that if Velasquez lied to the court, he could be prosecuted for making a false statement. See Rule 11 Tr. 15–16; Fed. R. Crim. P. 11(b)(1)(A). Velasquez affirmed that, with the assistance of the interpreter, he could hear and understand the proceeding. See Rule 11 Tr. 16. The court asked Velasquez if he heard and understood the court when it described his rights under the Constitution and laws of the United States. See id. at 17. Velasquez stated that he did. See id. Velasquez also affirmed that he heard and understood all the other questions that the court asked. See id. Velasquez's counsel at the hearing, Sonya Allen ("Attorney Allen"), stated that she did not have any reason to doubt Velasquez's competency to proceed with the Rule 11 hearing. See id. The Assistant United States Attorney also stated that he had no reason to doubt Velasquez's competency to proceed at the Rule 11 hearing. See id. The court then found Velasquez to be competent and confirmed his intent to plead guilty to counts two, three, and five of the indictment, and not guilty to counts one and four. See id.

The court then explained to Velasquez each of the charges in the indictment, the potential penalties for each charge, and the indictment's forfeiture allegation. See id. at 17–20; Fed. R. Crim. P. 11(b)(1)(G)–(J). Velasquez affirmed that he understood all the possible consequences of pleading guilty, that he had an absolute right to plead not guilty to all of the charges in the indictment, and that if he pleaded not guilty, he would enjoy all of the trial rights mentioned by the court with respect to every charge. See Rule 11 Tr. 21–22. The court then explained the court's obligation to calculate the applicable advisory guideline range, to consider that range and any

3

possible departures, and that the court would determine Velasquez's sentence and announce the sentence in court. See id. at 22. The court also advised Velasquez that any estimate of his potential sentence from anyone is not binding on the court and that any incorrect estimate would not provide a basis for withdrawing his guilty plea. See id.

The court then asked Velasquez if anyone threatened or forced him into pleading guilty to counts two, three, and five. See id. at 22–23. Velasquez answered, "No, sir." Id. at 23. The court also asked Velasquez if anyone made a promise to him or anyone else to make Velasquez plead guilty. See id. Velasquez replied, "No, sir." Id. Without a written plea agreement, Velasquez pleaded guilty to counts two, three, and five. See Rule 11 Tr. 17–26. Velasquez then pleaded not guilty to counts one and four. See id. at 27. The Assistant United States Attorney offered a factual basis for the guilty plea to counts two, three, and five. See id. at 27–30. The court accepted Velasquez's guilty plea to the charges in counts two, three, and five of the indictment. See id. at 30.

On February 7, 2020, the court granted Attorney Allen's motion to withdraw from the case. See [D.E. 45]. On February 11, 2020, R. Andrew McCoppin ("Attorney McCoppin") filed a notice of appearance as Velasquez's counsel. See [D.E. 46].

On May 27, 2020, Velasquez's trial began on counts one and four. See [D.E. 69, 107]. On May 29, 2020, the jury found Velasquez guilty on counts one and four. See [D.E. 71, 72, 109]. On September 9, 2020, the court sentenced Velasquez to 264 months' concurrent imprisonment on counts one and four and 240 months' concurrent imprisonment on counts two, three, and five, for a total of 264 months' imprisonment. See [D.E. 93, 94, 95, 113]. On October 16, 2020, Velasquez moved for a new trial. See [D.E. 100]. On April 14, 2021, the court denied Velasquez's motion. See [D.E. 114].

4

On April 19, 2021, Velasquez appealed. See [D.E. 115]. On October 25, 2022, the United States Court of Appeals for the Fourth Circuit reversed the court's order denying Velasquez's motion to dismiss the indictment on Speedy Trial Act grounds, vacated Velasquez's convictions on counts one and four, and vacated his entire sentence. See United States v. Velasquez, 52 F.4th 133, 142–43 (4th Cir. 2022); [D.E. 123, 124].

On January 12, 2023, Nardine Guirguis ("Attorney Guirguis") filed a notice of appearance as Velasquez's counsel. See [D.E. 129]. On April 18, 2023, the court granted Attorney Guirguis's motion to withdraw as Velasquez's counsel. See [D.E. 139]. On May 18, 2023, Richard Croutharmel ("Attorney Croutharmel") filed a notice of appearance as Velasquez's counsel. See [D.E. 145].

On July 27, 2023, the court held Velasquez's resentencing hearing. See [D.E. 149, 157]. The court resentenced Velasquez to 240 months' concurrent imprisonment on counts two and three, and 24 months' consecutive imprisonment on count five for a total of 264 months' imprisonment. See [D.E. 149, 150]; Resentencing Tr. [D.E. 157] 14–20. On August 17, 2023, Velasquez appealed. See [D.E. 151]. On September 11, 2024, the Fourth Circuit affirmed the court's amended judgment. See United States v. Velasquez, No. 23-4542, 2024 WL 4144407 (4th Cir. Sept. 11, 2024) (per curiam) (unpublished).

II.

The United States moves to dismiss Velasquez's section 2255 under Federal Rule of Civil Procedure 12(b)(1) to the extent Velasquez asks the court to stay deportation or removal proceedings against him. See [D.E. 180] 10–11. Although Velasquez does not cite any pending deportation or removal proceedings against him, the United States represents that Velasquez "may be subject to the reinstatement of a prior removal order." See [D.E. 180] 11. In his section 2255

5

motion, Velasquez asks the court to "issue an order staying [Velasquez's] deportation." [D.E. 167] 16; see also [D.E. 185] 2–3.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted), abrogated on other grounds by Riley v. Bondi, 606 U.S. 259 (2025); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012); Constantine v. Rectors & Visitors of Geo. Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005); Fed. R. Civ. P. 12(b)(1). A federal court "must determine that it has subject-matter jurisdiction over the case before it can pass on the merits of that case." Constantine, 411 F.3d at 479–80.

The court lacks jurisdiction to enter an order staying Velasquez's deportation and removal. See Mapoy v. Carroll, 185 F.3d 224, 227–31 (4th Cir. 1999) (holding that district court's lack jurisdiction to entertain habeas motions "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien" under the Immigration and Naturalization Act (quoting 8 U.S.C. § 1252(g)). Alternatively, Velasquez lacks standing to seek a stay of the potential reinstatement of a prior removal order. See, e.g., Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992); City of Los Angeles v. Lyons, 461 U.S. 95, 101–06 (1983); Long v. Bondi, 151 F.4th 503, 518–19 (4th Cir. 2025). Thus, the court dismisses Velasquez's section 2255 motion to the extent it seeks an order staying potential immigration proceedings against Velasquez.

III.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests a petition's legal and factual sufficiency. Fed. R.

6

Civ. P. 12(b)(6); see Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a petition's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (citation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

In reviewing a section 2255 petition, the court is not limited to the petition itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013); United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

The "Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (cleaned up). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, trial, sentencing, and appeal. See, e.g., Lee v. United States, 582 U.S. 357, 363–65 (2017); Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001); Hill v. Lockhart, 474 U.S. 52, 57–60 (1985).

To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, Velasquez must plausibly allege that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–91 (1984). When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. As for performance, a party must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

"Surmounting Strickland's high bar is never an easy task." Harrington v. Richter, 562 U.S. 86, 105 (2011) (citation omitted). "An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." Id. (cleaned up). The "standard for judging counsel's representation is a most deferential one." Id. "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." Id. "It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Id. (cleaned up).

A person asserting an ineffective assistance of counsel claim also must show that counsel's deficient performance was prejudicial. See Strickland, 466 U.S. at 691–96. A person does so by

8

showing that there is a "reasonable probability that, but for" the deficient performance, "the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Supreme Court based this "additional 'prejudice' requirement" on the "conclusion that 'an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" Hill, 474 U.S. at 57 (quoting Strickland, 466 U.S. at 691).

In assessing prejudice, Strickland "asks whether it is 'reasonably likely' the result would have been different." Harrington, 562 U.S. at 111 (quoting Strickland, 466 U.S. at 696). Strickland "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" Harrington, 562 U.S. at 111–12 (quoting Strickland, 466 U.S. at 693, 697). "The likelihood of a different result must be substantial, not just conceivable." Id. at 112 (citation omitted).

When a defendant pleads guilty and later attacks his guilty plea, "to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill 474 U.S. at 59 (quotations omitted); see Lee, 582 U.S. at 364–65. "[S]uch an individual 'must convince the court' that such a decision 'would have been rational under the circumstances.'" United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). "Surmounting Strickland's high bar is never an easy task, and the strong societal interest in finality has special force with respect to convictions based on guilty pleas." Lee, 582 U.S. at 368–69 (cleaned up).

"Requiring a showing of prejudice from defendants who seek to challenge the validity of their guilty pleas on the ground of ineffective assistance of counsel [serves] the fundamental interest in the finality of guilty pleas . . . ." Hill, 474 U.S. at 58 (quotations omitted). "Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice." Id. (citation omitted). "The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas." Id. (citation omitted).

"[I]f a defendant alleges that he has accepted a government plea offer based on the erroneous advice of counsel, but entered that plea only after the misadvice was corrected by the trial court at the Rule 11 hearing, then he will not be able to show the necessary causal link between counsel's error and his decision to plead guilty." United States v. Mayhew, 995 F.3d 171, 179–80 (4th Cir. 2021) (cleaned up); see United States v. Yelizarov, 140 F.4th 597, 604–05 (4th Cir. 2025), cert. denied, 146 S. Ct. 345 (2025); United States v. Akande, 956 F.3d 257, 262–63 (4th Cir. 2020); United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995). "Generally, a court should dismiss a claim in a [section] 2255 motion that contradicts a petitioner's sworn statements made during a Rule 11 plea colloquy." Yelizarov, 140 F.4th at 605; see United States v. Lemaster, 403 F.3d 216, 219–22 (4th Cir. 2005).

In ground one of his section 2255 motion, Velasquez alleges that Attorney Allen rendered ineffective assistance of counsel by (1) not providing Velasquez with an interpreter, (2) filing motions without Velasquez's approval, (3) insisting that Velasquez plead guilty to each of the charged offenses, (4) coercing him to plead guilty to counts two, three, and five, and (5) promising him that he would receive a 12 to 18 month probationary sentence. See [D.E. 167] 4–7; [D.E. 167-

10

Case 7:18-cr-00144-D    Document 186    Filed 06/01/26    Page 10 of 19

1] 1–6 [D.E. 168] 10–14; [D.E. 185] 11, 22–24. Velasquez asserts that Attorney McCoppin rendered ineffective assistance of counsel by (1) failing to object to certain evidence and testimony at trial, (2) failing to object to "an unknown male individual who barged into the courtroom" and entered the court's chambers, and (3) preventing Velasquez from testifying on his own behalf at trial. See [D.E. 167] 7–8.[1] Velazquez argues that his subsequent counsel "followed Ms. Allen's and Mr. McCoppin's ineffectiveness," and failed to investigate Velasquez's marriage certificate to an ex-wife and his scored criminal convictions in the Presentence Investigation Report ("PSR"), and an alleged attack on Velasquez which occurred in federal detention. See id. at 8. Velasquez also asserts that Attorney Guirguis "abandoned his defense" by withdrawing before sentencing. See id.

As for Velasquez's arguments about Attorney Allen's alleged failure to provide English to Spanish interpretation and file pretrial motions, and Attorney McCoppin's failure to object at trial, Velasquez fails to plausibly allege prejudice. Specifically, the Fourth Circuit vacated Velasquez's convictions on counts one and four after trial. See, e.g., Velasquez, 52 F.4th at 142–43; Velazquez, 2024 WL 4144407, at *1–2. Because Velasquez is not serving a sentence for any of the charges on which he went to trial, he cannot plausibly assert that any pretrial or trial error by counsel caused Sixth Amendment prejudice. See, e.g., Harrington, 562 U.S. at 111; Strickland, 466 U.S. at 691–96. In other words, the alleged errors "had no effect on the judgment" he now asks the court to vacate. Hill, 474 U.S. at 57.

As for Velasquez's arguments that Attorney Allen coerced him into pleading guilty to counts two, three, and five and promised him a sentence different from the one imposed by the

---

[1] Velasquez's statement about the courtroom during trial is false. Cf. Blackledge, 431 U.S. at 74 n.4; [D.E. 107, 108, 109].

11

court, Velasquez does not plausibly allege prejudice. At the Rule 11 hearing, Velasquez stated under oath that he understood the court's description of the sentencing process, the nonbinding nature of any prediction he received from his attorney about the sentence likely to be imposed at a sentencing hearing, and that the court could impose any sentence up to the statutory maximum. See Rule 11 Tr. 22–23. Velasquez also affirmed that he was not threatened or forced into pleading guilty to counts two, three, and five, and that no one made a promise to him to induce him into pleading guilty to counts two, three, and five. See id. Velasquez's statements at the Rule 11 hearing bind him and defeat his attacks on his guilty pleas to the charges in counts two, three, and five of the indictment. See Blackledge, 431 U.S. at 74; Yelizarov, 140 F.4th at 604–05; Lemaster, 403 F.3d at 219–22; Foster, 68 F.3d at 88 (holding counsel's failure to inform defendant of possibility of career offender designation was cured by Rule 11 hearing); cf. Mayhew, 995 F.3d at 180 ("This is not a case . . . in which a defendant accepts a government plea offer and pleads guilty in accordance with that offer only after a Rule 11 colloquy during which he hears a district court's corrective admonitions and indicates his understanding of them.").

Velasquez's remaining claims in ground one do not plausibly suggest deficient performance or prejudice. Velasquez's assertion about the scoring of his criminal convictions is wrong. See PSR [D.E. 89] ¶¶ 21–26 (scoring two misdemeanor driving while impaired convictions with one criminal history point each and assessing two points for committing the offense of conviction while under a criminal justice sentence for a criminal history category of three); see also [D.E. 126] 1–2. Velasquez fails to plausibly allege deficient performance and prejudice about Attorneys Guirguis's and Attorney Croutharmel's investigation (or lack thereof) into the marriage certificate and the alleged assault in federal custody, and Attorney Guirguis's withdrawal before

12

sentencing. See Harrington, 562 U.S. at 111–12; Hill, 474 U.S. at 57–58; Strickland, 466 U.S. at 687–96. Thus, the court rejects Velasquez's claims in ground one.

In ground two of his section 2255 motion, Velasquez alleges that defense counsels' errors caused violations of his substantive and procedural due process rights under the Fifth Amendment to the United States Constitution. See [D.E. 167] 9; [D.E. 168] 14–16. Velasquez incorporates his arguments from ground one. See id.; [D.E. 168] 14–15.

To the extent Velasquez asserts freestanding claims under the Fifth Amendment, Velasquez procedurally defaulted those claims. Section 2255 "imposes tight procedural constraints" on the scope of a movant's claims. Fernandez v. United States, __ U.S. __, 2026 WL 1485476, at *5 (2026). "[C]laims not raised on direct review are procedurally defaulted unless the prisoner can demonstrate cause and prejudice, or else actual innocence." Id. at *5 (citation and quotations omitted); see Massaro v. United States, 538 U.S. 500, 504 (2003); Bousley v. United States, 523 U.S. 614, 621 (1998); Fugit, 703 F.3d at 253; United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). Velasquez did not raise his procedural and substantive due process claims on direct appeal and has not demonstrated cause and prejudice or actual innocence to excuse this failure. To the extent Velasquez asserts claims concerning ineffective assistance of counsel, those claims properly are brought under the Sixth Amendment and as explained above, those claims are meritless.

In ground three of his section 2255 motion, Velasquez contends that if he were sentenced today, he would receive a lower sentence due to intervening changes in the law. See [D.E. 157] 11; [D.E. 168] 17–19. Velasquez also argues that his convictions should "be revisited in light of the vagueness doctrine." [D.E. 168] 19.

13

Velasquez did not raise the claims in ground three on direct appeal. Velasquez has not demonstrated cause and prejudice or legal innocence. Thus, Velasquez has procedurally defaulted the claims he seeks to bring in ground three. See Fernandez, 2026 WL 1485476, at *5; Massaro, 538 U.S. at 504; Bousley, 523 U.S. at 621; Fugit, 703 F.3d at 253; Sanders, 247 F.3d at 144.

Alternatively, Velasquez's arguments are meritless. The court resentenced Velasquez in 2023 after the First Step Act's passage in 2018. See, e.g., [D.E. 149, 150, 157]. His convictions on counts two, three, and five did not contain mandatory minimum sentences. See PSR ¶ 61. In fact, the convictions capped Velasquez's sentencing exposure at 20 years' imprisonment per count. See id.; 21 U.S.C. § 841(b)(1)(C); cf. Rule 11 Tr. 20 (informing Velasquez that, on counts two, three, and five, the maximum penalty is 20 years' imprisonment). The court imposed a sentence in accordance with the statutory maximum sentence, and the same statutory maximum sentence would apply if the court sentenced Velasquez today. Thus, the court rejects Velasquez's arguments in ground three.

In ground four of his section 2255 motion, Velasquez argues that his sentence should be reduced to reflect Amendment 821 Part A to the United States Sentencing Guidelines. See [D.E. 167] 12. Amendment 821 Part A, which became effective on November 1, 2023, amended Chapter Four of the Sentencing Guidelines by striking the old section 4A1.1(d). See U.S.SG. app. C, amend. 821. Before Amendment 821, section 4A1.1(d) added two status points "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." Id. § 4A1.1(d) (2021). Section 1B1.10 authorizes a court to reduce a defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) using Amendment 821. See id. § 1B1.10(d); United States v. Barrett, 133 F.4th 280, 282–83 (4th Cir. 2025). Velasquez's Amendment 821 argument is not cognizable under section

14

2255. See, e.g., United States v. Goines, 357 F.3d 469, 477 (4th Cir. 2004) ("[G]uideline claims ordinarily are not cognizable in [section] 2255 proceedings."); United States v. Brooks, No. CR JKB-18-408, 2024 WL 4803406, at *2 (D. Md. Nov. 15, 2024) (unpublished); Graham v. United States, No. 4:14-CR-85, 2017 WL 3706222, at *2 (D.S.C. Aug. 28, 2017) (unpublished).

Alternatively, the court construes the motion as a motion for a sentence reduction under 18 U.S.C. § 3582(c)(2) and declines to reduce Velasquez's sentence. Under 18 U.S.C. § 3582(c)(2), a court may reduce a defendant's term of imprisonment if the defendant has been "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered" by changes to the United States Sentencing Guidelines. 18 U.S.C. § 3582(c)(2); see Barrett, 133 F.4th at 282–83; United States v. Martin, 916 F.3d 389, 395 (4th Cir. 2019); United States v. Williams, 808 F.3d 253, 257–58 (4th Cir. 2015). A sentence reduction under 18 U.S.C. § 3582(c)(2) must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(2); Williams, 808 F.3d at 257. The Sentencing Commission policy statement in U.S.S.G. § 1B1.10 applies to section 3582(c)(2) proceedings. See Dillon v. United States, 560 U.S. 817, 819, 821 (2010); Martin, 916 F.3d at 396; Williams, 808 F.3d at 258.

The sentencing court follows a two-step inquiry when reviewing motions for sentence reductions under section 3582(c)(2). See Dillon, 560 U.S. at 826–27; United States v. Davis, __ F.4th __, 2026 WL 1291531, at *3 (4th Cir. 2026); Martin, 916 F.3d at 396; Williams, 808 F.3d at 258. First, the sentencing court must review the Sentencing Commission's instructions in U.S.S.G. § 1B1.10 "to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." Williams, 808 F.3d at 257–58 (cleaned up); see Davis, 2026 WL 1291531, at *3. At this step, section 1B1.10 requires the court to begin by "determining the amended guideline range that would have been applicable to the defendant had the relevant amendment been

in effect at the time of the initial sentencing." Dillon, 560 U.S. at 827 (cleaned up); see Davis, 2026 WL 1291531, at *3. If the court determines that the defendant is eligible for a sentence reduction, "the court moves to the second step and determines the extent of the reduction." Williams, 808 F.3d at 258; see Davis, 2026 WL 1291531, at *3. At step two, section 3582(c)(2) "instructs a court to consider any applicable [section] 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." Dillon, 560 U.S. at 827; see, e.g., Davis, 2026 WL 1291531, at *3; United States v. Navarro-Melendez, No. 1:18-CR-91, 2024 WL 1722524, at *1 (W.D.N.C. Apr. 22, 2024) (unpublished), aff'd, No. 24-6627, 2024 WL 4579416 (4th Cir. Oct. 25, 2024) (per curiam) (unpublished); United States v. Pledger, No. 2:12-CR-23, 2017 WL 3495723, at *1–2 (E.D.N.C. Aug. 14, 2017) (unpublished).

In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 585 U.S. 109, 115–20 (2018); Pepper v. United States, 562 U.S. 476, 480–81, 490 (2011); Davis, 2026 WL 1291531, at *4–8; United States v. Moody, 115 F.4th 304, 315–16 (4th Cir. 2024); United States v. Davis, 99 F.4th 647, 659 (4th Cir. 2024), abrogated on other grounds by Rutherford v. United States, __ U.S. __, 2026 WL 1485535 (2026); United States v. Smith, 75 F.4th 459, 464–66 (4th Cir. 2023); United States v. High, 997 F.3d 181, 187–91 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 329–30 (4th Cir. 2021) (per curiam); United States v. McDonald, 986 F.3d 402, 410–12 (4th Cir. 2021); Martin, 916 F.3d at 395–98.

16

At step one, the court calculates Velasquez's new advisory guideline range to be 210 to 262 months' imprisonment based on a total offense level of 36 and a criminal history category II. See [D.E. 157] 8; PSR ¶¶ 24–26. At step two, the court has reviewed the entire record, the parties' arguments, the new advisory guideline range, and all relevant factors under 18 U.S.C. § 3553(a). See Chavez-Meza, 585 U.S. at 117–20; Pepper, 562 U.S. at 490–93; Davis, 2026 WL 1291531, at *3–8; Moody, 115 F.4th at 315–16; Davis, 99 F.4th at 659; Smith, 75 F.4th at 464–66; United States v. Troy, 64 F.4th 177, 184 (4th Cir. 2023); United States v. Swain, 49 F.4th 398, 402 (4th Cir. 2022); United States v. Chambers, 956 F.3d 667, 671–75 (4th Cir. 2020), abrogated on other grounds by Concepcion v. United States, 597 U.S. 481 (2022); United States v. May, 783 F. App'x 309, 310 (4th Cir. 2019) (per curiam) (unpublished).

The court is very familiar with Velasquez's case. Cf. [D.E. 39, 60, 69–71, 93, 149]. Velasquez is 35 years old and engaged in extremely serious criminal behavior. From 2014 to July 9, 2018, Velasquez distributed large quantities of cocaine and crystal methamphetamine. See PSR ¶¶ 10–14. Velaquez was conservatively responsible for the distribution of 237.9 grams of cocaine and 889.83 grams of crystal methamphetamine for a converted drug weight of 17,844.18 kilograms. See id. ¶ 16.

This court disagrees with the Commission's retroactive policy change concerning status points. See Spears v. United States, 555 U.S. 261, 264–66 (2009) (per curiam) (acknowledging that a district court may reject and vary categorically from the guidelines based on a policy disagreement with the guidelines); Kimbrough v. United States, 552 U.S. 85, 108–11 (2007) (same); United States v. Rivera-Santana, 668 F.3d 95, 101 (4th Cir. 2012) (same). The policy change ignores how status points help to promote respect for the law for every offender who commits a new crime while on supervision. In explaining its reasons for the Amendment, the

17

Commission acknowledged that status points still serve multiple purposes of sentencing, including addressing the offender's lack of respect for the law. See U.S.S.G. supp. app. C, amend. 821, Reason for Amendment, 241 (explaining why the Commission retained status points for offenders in higher criminal history categories); U.S. Sent'g Comm'n Pub. Meeting Transcript, 27–28 (Aug. 24, 2023), https://www.ussc.gov/policy making/meetings-hearings (same). This court finds that status points serve an important purpose in promoting respect for the law for all offenders, not just offenders in higher criminal history categories. An offender who is on supervision when he commits a new crime shows even less respect for the law than an offender who is not on some form of supervision. A sentencing court may properly account for that difference in status in order to promote respect for the law under section 3553(a).

In any event, even if the court agreed with the Commission's new policy, the court would not reduce Velasquez's sentence due to the section 3553(a) factors. Velasquez is a committed drug dealer whose misdemeanor offenses did not prevent a major escalation in criminal conduct. Thus, construing ground four of Velasquez's section 2255 motion as a motion for a sentence reduction under section 3582(c)(2), the court declines to reduce Velasquez's sentence.

After reviewing the claims presented in Velasquez's motion, the court finds that reasonable jurists would not find the treatment of Velasquez's claims debatable or wrong, and that the claims do not deserve encouragement to proceed any further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

18

## IV.

In sum, the court GRANTS respondent's motion to dismiss [D.E. 179], DISMISSES petitioner's section 2255 motion [D.E. 167], DENIES AS MOOT petitioner's motion for judgment [D.E. 170], and DENIES a certificate of appealability.

SO ORDERED. This 1 day of June, 2026.

JAMES C. DEVER III
United States District Judge

19